UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAJU DAHLSTROM,<br><br>                    Plaintiff,<br><br>          v.<br><br>SAUK-SUIATTLE INDIAN TRIBE<br>OF WASHINGTON, et al.,<br><br>                    Defendants. | CASE NO. C16-0052JLR<br><br>ORDER DENYING MOTION FOR<br>TEMPORARY RESTRAINING<br>ORDER |

## I.      INTRODUCTION

Before the court are Defendant Sauk-Suiattle Indian Tribe of Washington's ("the Sauk-Suiattle" or "the Tribe") (1) motion seeking a temporary restraining order (TRO Mot. (Dkt. # 15)), and (2) motion to expedite the hearing on its motion for a temporary restraining order (Mot. to Exp. (Dkt. 16)).   The court has reviewed both motions,[1] all

---

[1] In motion to expedite, the Sauk-Suiattle seeks "shortened time" on the motion for a temporary restraining order.  (Mot. to Exp. at 1.)  The court's local rules do not provide for a motion to shorten time on another motion. *See generally* Local Rules W.D. Wash. LCR 7. Instead, a motion for a temporary restraining order is, by its nature, an expedited motion. *See*

ORDER - 1

submissions filed in support of and opposition thereto, the relevant portions of the record, and the applicable law.  Being fully advised,[2] the court DENIES both motions.

## II.      BACKGROUND

On January 12, 2016, Plaintiff Raju Dahlstrom filed a complaint under seal pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 32 U.S.C. § 3729-33 and the Washington State Medicaid Fraud and False Claims Act ("MFFCA"), RCW 74.66.005, *et seq.*  (Compl. (Dkt. # 1).)  The Sauk-Suiattle is a federally recognized Native American tribe in Darrington, Washington.  (*Id.* ¶ 31; Gov't Mot. (Dkt. # 4) at 2.) Defendant Community Natural Medicine, PLLC ("CNM") is a health clinic in Arlington, Washington.  (*See* Gov't Mot. at 2.)  The complaint also lists Defendants Christine Marie Jody Morlock, N.D., and Robert Larry Morlock, who are the owners of CNM, as well as Ronda Kay Metcalf, who is the Director of the Indian Health Service ("IHS") and the Health Clinic of the Sauk-Suiattle.  (*See* Compl. at 2; Gov't Mot. at 2.)

The Sauk-Suiattle employed Mr. Dahlstrom from 2010 through his termination on December 8, 2015.  (Compl. ¶ 30.)  The Tribe initially hired Mr. Dahlstrom as a Case Manager, but in April 2015, the Tribe promoted him to Director.  (Gov't Mot. at 3.)  He alleges that Defendants knowingly presented or caused to be presented false or fraudulent claims to the United States (and by extension, the State of Washington) by:  (1)

Local Rules W.D. Wash. LCR 65(b)(2) ("The motion [for a temporary restraining order] . . . may be noted for the same day it is filed.").  Thus, the court finds the Sauk-Suiattle's motion to expedite the hearing on its motion for a temporary restraining order to be redundant of its motion for a temporary restraining order.  Accordingly, the court will rule on these motions as if they were one motion.

[2] No party requested oral argument and the court finds oral argument unnecessary with respect to both motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

approving payments of cosmetic dentistry for two individuals; (2) allowing an individual to use vaccines specifically donated to the Sauk-Suiattle for that individual's own private business; (3) fraudulently certifying compliance with the IHS Loan Repayment Program; (4) using government funds to secretly purchase land originally meant for residential care for children, and after acquiring the land, dropping the programs for children; and (5) fraudulently using government resources designated for healthcare facility costs.  (*Id.*; *see generally* Compl.)

On September 26, 2016, the United States of America and Washington State notified the court of their decision not to intervene in the action at this time.  (Notice (Dkt. # 8) at 2 (citing 31 U.S.C. § 3730(b)(4)(B) and RCW 74.66.050).)  Accordingly, on September 28, 2016, the court ordered the case unsealed and ordered Mr. Dahlstrom to serve Defendants.  (9/28/16 Order (Dkt. # 9).)

On January 12, 2017, the Sauk-Suiattle filed a motion to dismiss Mr. Dahlstrom's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (MTD (Dkt. # 13).)  On January 24, 2017, the Sauk-Suiattle filed a motion for a temporary restraining order seeking to "restrain[] [Mr. Dahlstrom] from contact with . . . [D]efendants or attempting to personally serve summonses thereon pending the [c]ourt's ruling on [D]efendants' motion to dismiss . . . ."  (TRO Mot. (Dkt. # 15) at 1.)  The Sauk-Suiattle assert that Mr. Dahlstrom "has traveled to the Sauk-Suiattle Indian Reservation, made inquiries and derogatory statements about [the] [D]efendants, and appears to be engaging in a pattern of harassment and intimidation toward [D]efendants."  (*Id.* at 2.)  The Sauk-Suiattle further assert that because Mr. Dahlstrom "is (a) represented by counsel, and (b) not a

1  person disinterested in the civil action competent to serve process, and because (c) the

2  merit of [Mr. Dahlstrom's] complaint is questionable, the [c]ourt should enter an order

3  restraining . . . [Mr.] Dahlstrom or his designees from further attempts to contact or serve

4  process upon [D]efendants." (*Id.*)

5       The Sauk-Suiattle's motion for a temporary restraining order also contains

6  unsworn and unverified attachments that purport to be either letters or text messages from

7  certain Defendants in this action. (*See* TRO Mot. Exs. (Dkt. ## 15-1, 15-2.) The letters

8  and texts indicate that Mr. Dahlstrom had been at the residences of certain Defendants

9  and attempted to give papers to certain Defendants. (*Id.*)

10       Mr. Dahlstrom filed a response to the Sauk-Suiattle's motion on January 26, 2017.

11  (Resp. (Dkt. # 19).)[3]  The Sauk-Suiattle filed a reply memorandum the same day. (Reply

12  (Dkt. # 20).) In response to Mr. Dahlstrom's assertion that the evidence submitted by the

13  Sauk-Suiattle was inadmissible as hearsay under Federal Rule of Evidence 802 and

14  Federal Rule of Civil Procedure 43(c) (*see* Resp. at 2), the Sauk-Suiattle submitted three

15  declarations with their reply memorandum. (Metcalf Decl. (Dkt. # 20-1); Harris Decl.

16  (Dkt. # 20-2); Roberts Decl. (Dkt. # 20-3).)  The court now considers Mr. Dahlstrom's

17  motions.

18  *//*

19  ───────────────

20     [3] The court notes the following remark in Mr. Dahlstrom's responsive memorandum:
"Do [Defendants] think that Plaintiff Relator and his counsel are stupid, or what?" (Resp. at 4.)

21  This type of sarcastic remark is inappropriate for federal court practice and certainly for practice
before the undersigned judge. Such remarks are not helpful to the court and not worthy of
counsel. The court admonishes counsel to conduct himself with the decorum and

22  professionalism expected in federal court and to refrain from this kind of sarcastic remark in the
future.

1

### III.   ANALYSIS

2   The standard for issuing a temporary restraining order is the same as that for the

3   issuance of preliminary injunction.  *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox*

4   *Co.*, 434 U.S. 1345, 1347 n.2 (1977).  A preliminary injunction is "an extraordinary

5   remedy that may only be awarded upon a clear showing that the plaintiff is entitled to

6   such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "The

7   proper legal standard for preliminary injunctive relief requires a party to demonstrate (1)

8   'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in

9   the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4)

10   that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109,

11   1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).  As a corollary to this test, the Ninth

12   Circuit has also found that a preliminary injunction is appropriate if "serious questions

13   going to the merits were raised and the balance of the hardships tips sharply in the

14   plaintiff's favor," thereby allowing preservation of the status quo where complex legal

15   questions require further inspection or deliberation.  *Alliance for the Wild Rockies v.*

16   *Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  However, following *Winter*, the

17   "serious questions" approach supports a temporary restraining order only so long as the

18   plaintiff also shows that there is a likelihood of irreparable injury and that the injunction

19   is in the public interest.  *Id.* at 1135.  The moving party bears the burden of persuasion

20   and must make a clear showing that it is entitled to such relief.  *Winter*, 555 U.S. at 22.

21   The Tribe fail to meet neither standard.  Indeed, the Tribe fails to even address

22   how it meets the elements of the required *Winter* or *Cottrell* standards.  The motion seeks

ORDER - 5

1    two forms of relief:  (1) to restrain Mr. Dahlstrom "or his designees" from attempting to

2    serve Defendants prior to the court's decision on the Sauk-Suiattle's motion to dismiss,

3    and (2) to restrain Mr. Dahlstrom from having any contact with Defendants.  (TRO Mot.

4    at 1; *id.* at 2 ("[T]he [c]ourt should enter an order restraining Plaintiff Dahlstrom or his

5    designees from further attempts to contact or serve process upon [D]efendants.").)  The

6    court will address these issues in turn.

7         First, the Sauk-Suiattle cites no legal authority in support of the notion that the

8    court can issue a temporary restraining order to prevent service of process pending a

9    motion to dismiss.[4]  (*See generally* TRO Mot.)  More importantly, the Tribe fails to

10   demonstrate irreparable harm if the court declines to issue an order temporarily

11   restraining service of process pending the court's decision on the Tribe's motion to

12   dismiss.  (*See generally id.*)  If the Sauk-Suiattle believes that Mr. Dahlstrom's apparent

13   efforts to serve process upon Defendants in this action are improper, then a motion to

14   dismiss under Rule 12(b)(4) for insufficient process or Rule 12(b)(5) for insufficient

15   service of process is the Tribe's appropriate recourse, not a motion for a temporary

16   restraining order.  *See* Fed. R. Civ. P. 12(b)(4); Fed. R. Civ. P. 12(b)(5).

17        Second, the Sauk-Suiattle provides insufficient factual support to justify an order

18   temporarily restraining Mr. Dahlstrom from any contact with Defendants.  Indeed, none

19

20

21   _____

22        [4] Indeed, the Sauk-Suiattle cites no legal authority in its motions at all.  (*See generally*
     TRO Mot.; Mot. to Exp.)

1   of the evidence submitted by the Sauk-Suiattle establishes a "clear showing" that the

2   Tribe or other Defendants are entitled to relief.[5] *See Winter*, 555 U.S. at 22.

3          For example, Defendant Rhonda Metcalf indicates in her declaration that her

4   brother-in-law found a large birthday bag on her porch with balloons attached and papers

5   inside; and on the next day, he found a yellow bag on her porch with papers inside as

6   well. (Metcalf Decl. ¶¶ 3-4.)  She also found her mailbox open and mail lying on the

7   ground. (*Id.* ¶ 5.)  Finally, her 11-year-old granddaughter reported that an adult male

8   knocked on Ms. Metcalf's door, refused to identify himself, and left a packet of papers on

9   the porch. (*Id.* ¶ 6.)  Ms. Metcalf told the unidentified male that she would call the police

10  if he did not leave, and he threw the papers on her porch. (*Id.*)  Although Mr. Dahlstrom

11  may have been involved in these incidents in some way, nothing in Ms. Metcalf's

12  declaration specifically ties him to these incidents.  Further, nothing in her declaration

13  indicates that Ms. Metcalf will suffer irreparable harm absent the entry of a temporary

14  restraining order or otherwise provides grounds for an order temporarily restraining Mr.

15  Dahlstrom from any contact with Defendants.

16         Mr. Harris states in his declaration that Mr. Dahlstrom came to his residence and

17  stated that he was looking for Ms. Metcalf, he had heard that she had been sick, and he

18  wanted to check on her. (Harris Decl. ¶ 2.)  According to Mr. Harris, Mr. Dahlstrom

19  stated that he had checked Ms. Metcalf's mailbox and it looked as if she had not been

20  _____

21         [5] Mr. Dahlstrom complains that the evidence submitted by the Sauk-Suiattle is
    incompetent or otherwise objectionable as hearsay. (Resp. at 2.)  In deciding whether to issue a
    temporary restraining order, however, the district court "may give even inadmissible evidence

22  [even hearsay] some weight, when to do so serves the purpose of preventing irreparable harm
    before trial." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

1    picking up her mail.  (*Id.*)  Mr. Dahlstrom also told Mr. Harris that he wanted to give her

2    some legal papers.  (*Id.*)  There is nothing that indicates any threat to Defendants in Mr.

3    Harris's declaration.  (*See generally id.*)  Moreover, nothing in Mr. Harris's declaration

4    indicates that any Defendant will suffer irreparable injury unless the court issues a

5    temporary restraining order against Mr. Dahlstrom.

6           Finally, Mr. Roberts declares that a man arrived at the residence of his mother,

7    Beverly Francis, and served two summonses and complaints on her. (Roberts Decl. ¶ 3.)

8    He also declares that he was not home at the time and his mother is not an agent of the

9    Sauk-Suiattle or authorized to accept service on the Tribe's behalf.  (*Id.* ¶¶ 4-5.)  Again,

10   nothing in this declaration indicates that irreparable injury will result if the court fails to

11   issue a temporary restraining order or provides any other basis for such relief.[6]  Thus, the

12   Sauk-Suiattle fails to meet its burden of persuasion that irreparable injury is likely in the

13   absence of a temporary restraining order.  Accordingly, the court denies its motion for a

14   temporary restraining order.[7]

15

16

_____

17   [6] The court has also reviewed the unauthenticated documents attached to the
     Sauk-Suiattle's motion and concludes that none of this material indicates that irreparable harm
     will result in the absence of a temporary restraining order.

18

19   [7] Because the Tribe fails to meet its burden of demonstrating irreparable injury, the court
     need not consider the other requirements of the *Winter* or *Cotrell* tests.  *See Alliance for Wild
20   Rockies*, 632 F.3d at 1131-35; *see also Pom Wonderful LLC v. Pur Beverages LLC*, No. CV
     13-06917 MMM (CWx), 2015 WL 10433693, at *18 (C.D. Cal. Aug. 6, 2015) (finding no need
     to address the remaining factors because plaintiff failed to adduce evidence of irreparable harm);
21   *ET Trading, LTD v. ClearPlex Direct, LLC*, No. 15-CV-00426-LHK, 2015 WL 913911, at *3
     (N.D. Cal. Mar. 2, 2015) ("The Court need not address all of the *Winter* factors because the
22   [c]ourt finds that Plaintiff has failed to carry its burden of demonstrating that it will be
     irreparably harmed absent a temporary restraining order.").

ORDER - 8

After thoroughly reviewing the Sauk-Suiattle's motion for a temporary restraining order and its supporting documentation, the court concludes that the motion is patently frivolous under Federal Rule of Civil Procedure 11.[8]  *See* Fed. R. Civ. P. 11(b).  Forcing the court to rule on such a motion represents a waste of limited judicial resources.  If counsel for the Sauk-Suiattle continues to file such motions, the Sauk-Suiattle and its counsel should expect the court to issue an order to show cause why sanctions should not be imposed pursuant to Rule 11(c)(3), other statutory authority, and the court's inherent authority.  *See* Fed. R. Civ. P. 11(c)(3); 28 U.S.C. § 1927; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (federal courts have inherent power to impose sanctions against both attorneys and parties for "bad faith" conduct in litigation or for "willful disobedience" of a court order).

## IV.   CONCLUSION

Based on the foregoing analysis, the court DENIES the Sauk-Suiattle's motion for a temporary restraining order (Dkt. # 15) and its motion to expedite the hearing on its motion for a temporary restraining order (Dkt. # 16).  The court also finds that the Tribe's motion for a temporary restraining order is frivolous and warns counsel that continuing to

//

//

//

---

[8] The court also notes that the Sauk-Suiattle filed motion was filed in violation of the court's local rules because it did not include a proposed order.  *See* Local Rules W.D. Wash. LCR 65(b)(4) ("A motion for a temporary restraining order must include a proposed order specifically setting forth the relief requested and describing in reasonable detail the act or acts to be restrained or required.").  The court admonishes counsel to review the court's local rules prior to filing anything further with the court.

1    file frivolous motions may result in the issuance of an order to show cause and the

2    subsequent entry of sanctions.

3          Dated this 31st day of January, 2017.

4

5

6          JAMES L. ROBART
           United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 10