UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAJU DAHLSTROM, et al., | CASE NO. C16-0052JLR |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| v. | |
| SAUK-SUIATTLE INDIAN TRIBE, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court is Defendants Sauk-Suiattle Indian Tribe of Washington ("the Sauk-Suiattle" or "the Tribe"), Community Natural Medicine, PLLC ("CNM"), Christine Morlock, Robert Morlock, and Ronda Metcalf's (collectively "Defendants") motion to dismiss Plaintiff Raju Dahlstrom's claims against them.  (MTD (Dkt. # 13).)  Mr. Dahlstrom opposes Defendants' motion.  (Resp. (Dkt. # 19).)  The court has reviewed the

1    motion, all of the parties' submissions related to the motion,[1] the relevant portions of the

2    record, and the applicable law.  Being fully advised, the court GRANTS the motion with

3    respect to Mr. Dahlstrom's claims against the Sauk-Suiattle, but DENIES the motion with

4    respect to Mr. Dahlstrom's claims against CNM, Dr. Morlock, Mr. Morlock, and Ms.

5    Metcalf.  The court declines to grant Mr. Dahlstrom leave to amend his claims against the

6    Sauk-Suiattle because these claims fail as a matter of law.  Finally, the court DENIES

7    Defendants' request for Federal Rule of Civil Procedure 11 sanctions and attorney's fees.

8                                    **II.    BACKGROUND**

9          On January 12, 2016, Mr. Dahlstrom filed a complaint under seal pursuant to the

10   *qui tam* provisions of the False Claims Act ("FCA"), 32 U.S.C. §§ 3729-33, and the

11   Washington State Medical Fraud and False Claims Act ("MFFCA"), RCW 74.66.005 *et*

12   *seq.*  (Compl. (Dkt. # 1).)  The Sauk-Suiattle is a federally recognized Native American

13   tribe in Darrington, Washington.  (*Id.* ¶ 31; Gov't Mot. (Dkt. # 4) at 2.)  CNM is a health

14   clinic in Arlington, Washington, owned by Dr. Morlock and Mr. Morlock.  (*See* Gov't

15   Mot. at 2.)  The complaint also lists Dr. Morlock, Mr. Morlock, and Ms. Metcalf

16   (collectively, "Individual Defendants"), who is the Director of the Indian Health Service

17   _____

18        [1] Mr. Dahlstrom filed a surreply.  (Surreply (Dkt. # 30).)  A party may "file a surreply
     requesting that the court strike" material in a reply brief, provided that (1) the party files a notice
     of intent to file a surreply as soon as is practicable after receiving the reply brief; (2) the surreply
19   is filed within five days of the filing of the reply brief and is "strictly limited to addressing the
     request to strike," and (3) the surreply does not exceed three pages.  Local Rules W.D. Wash.
20   LCR 7(g).  In his surreply, Mr. Dahlstrom makes substantive arguments in support of his
     opposition to Defendants' motion to dismiss in the guise of a request to strike material in the
21   reply brief.  (*See generally* Surreply.)  Nevertheless, even if the court were to consider Mr.
     Dahlstrom's surreply as a proper request to strike material in the reply brief under Local Rule
22   LCR 7(g), the arguments advanced in Mr. Dahlstrom's surreply would not change the outcome
     of the court's ruling here.

1   ("IHS") and the Health Clinic of the Sauk-Suiattle, as defendants.  (*See* Compl. at 2;

2   Gov't Mot. at 2.)

3          The Sauk-Suiattle employed Mr. Dahlstrom from 2010 through his termination on

4   December 8, 2015.  (Compl. ¶ 30.)  The Tribe initially hired Mr. Dahlstrom as a Case

5   Manager, but in April 2015, the Tribe promoted him to Director.  (*Id.*; Gov't Mot. at 3.)

6   Mr. Dahlstrom alleges that Defendants knowingly presented or caused to be presented

7   false or fraudulent claims to the United States—and by extension, the State of

8   Washington—by:  (1) approving payments of cosmetic dentistry for two individuals; (2)

9   allowing an individual to use vaccines specifically donated to the Sauk-Suiattle for that

10  individual's own private business; (3) fraudulently certifying compliance with the IHS

11  Loan Repayment Program; (4) using government funds to secretly purchase land

12  originally meant for residential care for children, and after acquiring that land, dropping

13  the programs for children; and (5) fraudulently using government resources designated

14  for healthcare facility costs.  (*Id.*; *see generally* Compl.)

15         On September 26, 2016, the United States of America and Washington State

16  notified the court of their decision not to intervene in the action.  (Notice (Dkt. # 8) at 2

17  (citing 31 U.S.C. § 3703(b)(4)(B) and RCW 74.66.050).)  Accordingly, on September 28,

18  2016, the court unsealed the case and ordered Mr. Dahlstrom to serve Defendants.

19  (9/8/16 Order (Dkt. # 9).)

20         On January 12, 2017, Defendants filed the instant motion to dismiss Mr.

21  Dahlstrom's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (MTD.)

22  On the same day, Defendants filed a supplement to their motion to dismiss to move for

1  sanctions and attorney's fees.  (Supp. Mot. (Dkt. # 14).)  The court now considers

2  Defendants' motions.

### III.    ANALYSIS

#### A. Standard for a Motion to Dismiss

When considering a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the court construes the complaint in the light most favorable to the nonmoving

party.  *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

2005).  The court must accept all well-pled facts as true and draw all reasonable

inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135

F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th

Cir. 2010).  A court may dismiss a complaint if it lacks a cognizable legal theory or states

insufficient facts under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530,

534 (9th Cir. 1984).

The court need not accept as true a legal conclusion presented as a factual

allegation.  *Iqbal*, 556 U.S. at 678.  Although the pleading standard of Federal Rule of

Civil Procedure 8 does not require "detailed factual allegations," it demands more than

"an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly*,

550 U.S. at 555).  A pleading that offers only "labels and conclusions or a formulaic

1  recitation of the elements of a cause of action" will not survive a motion to dismiss under

2  Federal Rule of Civil Procedure 12(b)(6).  *Id.*

3  **B. Sovereign Immunity**

4  Defendants argue that they are immune from Mr. Dahlstrom's claims due to the

5  Tribe's sovereign immunity.  (MTD at 2.)  Defendants further claim that the

6  Sauk-Suiattle's sovereign immunity extends to all Defendants.  (MTD at 5, n.1.)  Mr.

7  Dahlstrom responds that sovereign immunity does not exist "where, as here, the suit is

8  brought by or on behalf of the United States," and he contends the word "person" in the

9  FCA includes tribal entities such as the Sauk-Suiattle.  (Resp. at 15-21.)

10  The FCA imposes civil liability on "any person" who "knowingly presents, or

11  causes to be presented, to an officer or employee of the United States Government . . . a

12  false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a).  An FCA claim

13  may be commenced by the Government or by a private person—a "relator"—as a *qui tam*

14  civil action on behalf of the United States Government.  31 U.S.C. § 3730(a)-(b).

15  Although private individuals may bring suit on behalf of the United States under the

16  FCA's *qui tam* provisions, the FCA "does not subject a State (or state agency) to liability

17  in such actions."  *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765,

18  787 (2000).  In *Stevens*, the Court concluded that in the context of FCA *qui tam* suits, the

19  term "person" in § 3729(a) does not include states.  *Id.* (citing 31 U.S.C. § 3729(a)).

20  Similar to state sovereign immunity, "[a]s a matter of federal law, an Indian tribe

21  is subject to suit only where Congress has authorized the suit or the tribe has waived its

22  immunity."  *Kiowa Tribe of Okla. v. Mfg. Techs. Inc.*, 523 U.S. 751, 754 (1998) (citing

1  *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877 (1986);

2  *Santa Clara v. Martinez*, 436 U.S. 49 (1978); *United States v. U.S. Fid. & Guar. Co.*, 309

3  U.S. 506 (1940)). Because "immunity possessed by Indian tribes is not coextensive with

4  that of the States," tribal immunity is "a matter of federal law and is not subject to

5  diminution by the States." *Id.* at 755-56 (citing *Blatchford v. Native Village of Noatak*,

6  501 U.S. 775 (1991) (distinguishing state sovereign immunity from tribal sovereign

7  immunity because tribes were not present at the Constitutional Convention and were thus

8  not parties to the "mutuality of . . . concession" that "makes the States' surrender of

9  immunity from suit by sister states plausible")). The court now considers whether

10  Defendants in this suit are protected by tribal sovereign immunity.[2]

11        1.  Sauk-Suiattle Indian Tribe

12        Like a state, a Native American tribe "is a sovereign that does not fall within the

13  definition of a 'person' under the FCA." *Howard ex rel. United States v.*

14  *Shoshone-Paiute Tribes of the Duck Valley Indian Reservation*, 608 F. App'x 468, 468

15  (9th Cir. 2015) (citing *Stevens*, 529 U.S. at 787 (2000)) ("[T]he same historical evidence

16  and features of the FCA's statutory scheme that failed to rebut the presumption for the

17  states in *Stevens*, here similarly fail to rebut the presumption for sovereign Indian

18  tribes."). The Sauk-Suiattle tribe is a federally recognized Native American tribe.

19

20

21        [2] Because Mr. Dahlstrom brings his claim under the FCA's *qui tam* provisions and the
    United States has declined to intervene (Notice at 2), the court need not decide whether
22  Defendants have sovereign immunity from FCA claims in which the United States does
    intervene.

ORDER - 6

1  (Compl. ¶ 31; MTD at 2.)  The Tribe is thus immune from Mr. Dahlstrom's *qui tam* FCA

2  claims.

3       2. <u>CNM</u>

4       Because the Sauk-Suiattle has sovereign immunity with respect to Mr.

5  Dahlstrom's *qui tam* suit, whether CNM is also immune depends on whether it "functions

6  as an arm of the tribe." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir.

7  2006) (holding that a casino was entitled to sovereign immunity as an arm of the tribe).

8  Tribal sovereign immunity extends to business activities of the tribe, not merely

9  governmental activities. *Id.* (citing *Kiowa Tribe*, 523 U.S. at 757-60).  "The question is

10  not whether the activity may be characterized as a business, which is irrelevant under

11  *Kiowa*, but whether the entity acts as an arm of the tribe so that its activities are properly

12  deemed to be those of the tribe." *Id.*  The Ninth Circuit has developed a five-factor test to

13  determine whether a business functions as an "arm of the tribe" such that it is entitled to

14  sovereign immunity.  *White v. Univ. of Cal.*, 765 F.3d 1010, 1025 (9th Cir. 2014) (citing

15  *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173,

16  1187 (10th Cir. 2010)).  The court examines:

17
        (1) the method of creation of the economic entities; (2) their purpose; (3)
18      their structure, ownership, and management, including the amount of
        control the tribe has over the entities; (4) the tribe's intent with respect to
        the sharing of its sovereign immunity; and (5) the financial relationship
19      between the tribe and the entities.

20  *Id.*  An entity asserting immunity as an arm of a sovereign tribe must show by a

21  preponderance of the evidence "that it is, in fact, an arm of the tribe." *Gristede's Foods,*

22  *Inc. v. Unkechuage Nation*, 660 F. Supp. 2d 442, 466 (E.D.N.Y. 2009) (holding that the

1    requirement that a business be licensed by the tribal council because it was on tribal

2    grounds was insufficient to demonstrate that the business was an arm of the tribe).

3           Defendants argue that "all defendants . . . [a]re tribal employees or agents or

4    officials acting in their official capacity," but they do not explicitly argue that CNM is an

5    arm of the tribe.  (MTD at 5-6, n.1; Reply (Dkt # 20) at 3.)  In fact, Defendants imply that

6    CNM is not an arm of the Tribe, by arguing that with the exception of CNM, each of the

7    named defendants are employees of the Sauk-Suiattle Tribe.  (*See* Reply at 3.)

8           Mr. Dahlstrom also argues inconsistently concerning CNM's status vis-à-vis the

9    Tribe.  On the one hand, Mr. Dahlstrom argues that CNM is a business corporation

10   owned by Dr. Morlock and Mr. Morlock.  (Resp. at 1.)  In his response to Plaintiffs'

11   motion to dismiss, Mr. Dahlstrom contends that "CNM has no connection with the

12   Sauk-Suiattle Tribe, other than profiting from federally funded vaccines which Dr.

13   Morlock diverted from the tribal health clinic for use in her own private business."  (*Id.* at

14   2.)  However, in his complaint, Mr. Dahlstrom asserts that Defendants are "so

15   inextricably intertwined" that they constitute a single entity.  (Compl. ¶ 23.)  The court

16   concludes that Defendants have not met their burden of establishing that CNM is an arm

17   of the tribe.  The court therefore denies Defendants' motion to dismiss CNM on the basis

18   of sovereign immunity.[3]

19

20          _____

             [3] Defendants also argue in a footnote to their reply that it is not clear that the allegations
21   against CNM fall within the scope of the FCA.  (Reply at 3 n.1.)  Mr. Dahlstrom claims that
     CNM diverted federally funded vaccines from the Tribe through false claims made by its
22   owners, Dr. Morlock and Mr. Morlock.  (Compl. ¶¶ 35, 74; Resp. at 3.)  Because the court
     accepts these allegations as true for the purpose of evaluating Defendants' motion to dismiss, the

1        3.  <u>Individual Defendants</u>

2        Mr. Dahlstrom is suing Individual Defendants in their individual capacities.

3   (Resp. at 3; Compl ¶¶ 32-34.)  Defendants argue that Individual Defendants "were tribal

4   employees or agents or officials acting in their official tribal capacity."  (MTD at 5-6, n.1;

5   Reply at 3.)  Defendants argue that the Tribe's sovereign immunity, therefore, extends to

6   Individual Defendants.

7        The Ninth Circuit's decision in *Stoner v. Santa Clara County Office of Education*,

8   502 F.3d 1116, 1125 (9th Cir. 2007), precludes Defendants' argument.  In *Stoner*, the

9   Ninth Circuit held that state employees may be sued under the FCA even for "actions

10  taken in the course of their official duties."  *Id*.  The Court reasoned that *Stevens* does not

11  preclude *qui tam* suits against individual state employees "because such [actions] seek

12  damages from the individual defendants rather than the state treasury."  *Id.* (citing *Alden*

13  *v. Maine*, 527 U.S. 706, 757 (1999)).  The court concludes that just as the reasoning of

14  *Stevens* extends to provide Tribes with sovereign immunity, so too does the reasoning in

15  *Stoner* extend to permit suits against individual tribal employees for "actions taken in the

16  course of their official duties."  *Stoner*, 502 F.3d at 1125.  Individual Defendants are thus

17  not immune from suit due to sovereign immunity.[4]  *See id.*

18

19  court finds that Mr. Dahlstrom's complaint sufficiently states a claim for relief against CNM.
    *Wyler Summit*, 135 F.3d at 661.

20

21      [4] Defendants alternatively argue that the court should dismiss Mr. Dahlstrom's claims
    because the Tribe is a necessary and indispensable party that cannot be joined pursuant to
    Federal Rule of Civil Procedure 19.  (MTD at 5-6 n.1 (citing Fed. R. Civ. P. 19).)  As the moving

22  parties, Defendants have the burden of persuasion to establish that the Tribe is a necessary and
    indispensable party pursuant to Rule 19.  *Desoto Cab Co., Inc. v. Picker*, 196 F. Supp. 3d 1107,

1    **C.  Sanctions and Attorney's fees**

2         Defendants seek Federal Rule of Civil Procedure 11 sanctions and attorney's fees

3    against Mr. Dahlstrom and Mr. Dahlstrom's attorney because "the doctrine of tribal

4    sovereign immunity [is] so firmly established in this Circuit as to warrant imposition of

5    attorney's fees for proceeding with a lawsuit against a clearly immune defendant."

6    (Supp. Mot. at 2 (citing *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476 (9th Cir.

7    1985) (holding that attorneys' fees were appropriately awarded because the plaintiff's

8    claim was "patently barred by Supreme Court discussion of the scope of tribal

9    sovereignty" and the plaintiff acted in bad faith)).)  Defendants argue that Mr. Dahlstrom

10   has a "pattern and practice of filing multiple grievances against former employers and of

11   filing groundless lawsuits."  (*Id.* at 1.)

12        Federal Rule of Civil Procedure 11 sanctions are committed to the discretion of

13   the court.  *Holgate v. Baldwin*, 425 F.3d 671, 675 (9th Cir. 2005).  Because the court

14   grants in part and denies in part Defendants' motion, the court does not find that Mr.

15   Dahlstrom's claims were patently barred or brought in bad faith.  The court thus declines

16   to sanction Mr. Dahlstrom or his attorney or award Defendants attorney's fees.

17   _____

18   1118 (N.D. Cal. 2016) (citing *Brum v. Cty. of Merced*, No. 1:12-cv-01636-AWI-KSO, 2013 WL 2404844, at *4 (E.D. Cal. May 31, 2013)); *see also Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (citing *Sierra Club v. Watt*, 608 F. Supp. 305, 312 (E.D. Cal. 1985) ("The moving party has the burden of persuasion in arguing for dismissal.")).  Defendants assert their Rule 19 argument in a single footnote without supporting analysis.  (MTD at 5-6 n.1.)  The argument is insufficiently developed, and therefore the court declines to rule on it.  *See, e.g.*, *Brian Jonestown Massacre v. Davies*, No. 13-CV-04005 NC, 2014 WL 1900844, at *4 (N.D. Cal. May 12, 2014) (citing *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1982)) ("Defendant has provided no evidence or argument regarding whether joinder of other parties is possible or necessary.  Defendant thus falls far short of meeting his burden of showing that a party is indispensible and cannot be joined.").

ORDER - 10

1

## IV.   CONCLUSION

2          Based on the foregoing analysis, the court GRANTS Defendants' motion to

3  dismiss (Dkt. # 13)  with respect to Mr. Dahlstrom's claims against the Sauk-Suiattle, but

4  DENIES the motion with respect to Mr. Dahlstrom's claims against CNM, Dr. Morlock,

5  Mr. Morlock, and Ms. Metcalf.  The court DISMISSES Mr. Dahlstrom's claims against

6  the Tribe with prejudice and without leave to amend because these claims fail as a matter

7  of law.  Finally, the court declines Defendants' request to award Rule 11 sanctions and

8  attorney's fees.

9          Dated this 21st day of March, 2017.

10

11

12                                                    _____

13                                                    JAMES L. ROBART
                                                      United States District Judge

14

15

16

17

18

19

20

21

22