UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,
*ex rel*. RAJU A.T. DAHLSTROM,

STATE OF WASHINGTON, *ex rel*.
RAJU A.T. DAHLSTROM,

                        Plaintiffs,

        v.

SAUK-SUIATTLE INDIAN TRIBE
OF WASHINGTON, et al.,

                        Defendants.

CASE NO. C16-0052JLR

ORDER REGARDING THE
PLAINTIFF'S NOTICE OF
BANKRUPTCY, THE PARTIES'
RESPONSES TO THE COURT'S
ORDER TO SHOW CAUSE, AND
CERTAIN MOTIONS

## I.  INTRODUCTION

Before the court are:  (1) Plaintiff Raju A.T. Dahlstrom's notice of Chapter 13

bankruptcy (Bankr. Not. (Dkt. # 84)); (2) the parties' responses to the court's order to

show cause why the court should not award a portion of Defendants' attorney's fees

against Mr. Pope, personally, as a sanction pursuant to 28 U.S.C. § 1927, Federal Rule of

Civil Procedure 11(b), or its inherent authority (Def. OSC Resp. (Dkt. # 89); Pope OSC Resp. (Dkt. # 101); *see also* SJ Order (Dkt. # 79) at 36-37 (detailing order to show cause)); (3) Mr. Dahlstrom's and his attorney Richard L. Pope's agreed motion for Mr. Pope to withdraw as Mr. Dahlstrom's counsel (MTW (Dkt. # 83)); and (4) Mr. Dahlstrom's motion for relief from the deadline to file a motion for reconsideration of the court's summary judgment order (MFR (Dkt. # 87); *see also* SJ Order).  The court has reviewed the bankruptcy notice, the parties' responses to and other submissions regarding the court's order to show cause, Mr. Dahlstrom's motions, the parties' submissions filed in support of and opposition to the motions, the relevant portions of the record, and the applicable law.  Being fully advised, the court (1) STAYS consideration of its imposition of attorney's fees and costs against Mr. Dahlstrom due to his bankruptcy notice; (2) AWARDS a portion of Defendants' attorney's fees against Mr. Pope personally as a sanction for bad faith conduct pursuant to 28 U.S.C. § 1927 and the court's inherent authority; (3) GRANTS Mr. Dahlstrom's and Mr. Pope's agreed motion for Mr. Pope to withdraw as Mr. Dahlstrom's counsel; and (4) GRANTS in part and DENIES in part Mr. Dahlstrom's motion for relief from the deadline to file a *pro se* motion for reconsideration as described below.

## II.    BACKGROUND

Defendant Sauk-Suiattle Indian Tribe of Washington's ("the Tribe") initially hired Mr. Dahlstrom as a social worker for the Tribe's Indian Child Welfare Department in 2010.  (6/6/19 Nedderman Decl. (Dkt. # 67) ¶ 2, Ex. 1.)  Mr. Dahlstrom became the Director of the Department in 2011.  (*Id.* ¶ 3, Ex. 2.)  On April 30, 2015, the Tribe

appointed Mr. Dahlstrom interim Health and Social Services ("HSS") Director. (*Id*. ¶ 4, Ex. 3.) In July 2015, the Tribe appointed him HSS Director. (Id. ¶ 5, Ex. 4.) As an at-will employee, Mr. Dahlstrom acknowledged that the Tribe "may terminate [his] employment at any time, with or without cause." (*Id*. ¶ 6, Ex. 5.) The Tribe placed Mr. Dahlstrom on administrative leave with pay in October 2015. (*Id*. ¶ 7, Ex. 6.) The Tribal Counsel terminated his employment without cause on December 4, 2015. (*Id*. ¶ 8, Ex. 7; *see also* Metcalf Decl. (Dkt. # 66) ¶ 2.) Mr. Dahlstrom received a letter confirming his termination on December 8, 2015. (6/6/19 Nedderman Decl. ¶ 9, Ex. 8.)

On January 12, 2016, approximately one month after the Tribal Counsel terminated his employment, Mr. Dahlstrom filed this *qui tam* lawsuit as a *pro se* litigant. (Compl. (Dkt. # 1).) Mr. Dahlstrom asserted claims under the federal False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and the Washington Medicaid Fraud False Claims Act ("the Washington Medicaid Fraud FCA"), RCW ch. 74.66. (*See Compl*. ¶¶ 71-82.) He also brought claims for FCA retaliation and Washington Medicaid Fraud FCA retaliation. (*See id*. ¶¶ 92-95.)

Because a plaintiff may not prosecute a *qui tam* action *pro se*, *see Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1127 (9th Cir. 2007), on January 22, 2016, the court issued an order to show cause within 30 days why the matter should not be dismissed (*see* 1/22/16 OSC (Dkt. # 2) at 1-2). Alternatively, the court ordered Mr. Dahlstrom to retain counsel within the same timeframe. (*Id*. at 2.) On February 18, 2016, Mr. Pope appeared on Mr. Dahlstrom's behalf. (Not. of App. (Dkt. # 3).) Mr. Pope attests that he "believed Mr. Dahlstroms' claims . . . to be valid when [he] entered

[his] [n]otice of [a]ppearance" (9/26/19 Pope Decl. ¶ 22), however, Mr. Pope does not describe what, if any, investigation he undertook prior to agreeing to represent Mr. Dahlstrom (*see generally id.*).

On September 26, 2016, the United States of America and Washington State notified the court of their decision not to intervene in the action. (Notice (Dkt. # 8) at 2 (citing 31 U.S.C. § 3703(b)(4)(B) and RCW 74.66.050).) Accordingly, on September 28, 2016, the court unsealed the case and ordered Mr. Dahlstrom to serve Defendants with the complaint and related filings. (9/28/16 Order (Dkt. # 9) at 2.)

On January 12, 2017, Defendants Sauk-Suiattle Indian Tribe of Washington ("the Sauk-Suiattle" or "the Tribe"), Community Natural Medicine, PLLC ("CNM"), Christine Morlock, Robert Morlock, and Ronda Metcalf's (collectively "Defendants") filed a motion to dismiss arguing that they were immune from suit due to the Tribe's sovereign immunity and that this immunity extended to all Defendants. (MTD (Dkt. # 13).) Defendants did not challenge the merits of Mr. Dahlstrom's allegations in their motion. (*See id.* at 4 ("Movant expresses no opinion upon the merits of Plaintiff Dahlstrom's allegations . . . .").) On March 21, 2017, the court granted Defendants' motion to dismiss as to the Tribe but denied the motion as to all other Defendants. (3/21/17 Order (Dkt. # 39).) The court concluded that Defendants failed to establish that the other Defendants shared in the Tribe's sovereign immunity. (*Id.* at 7-9.)

On June 6, 2019, the remaining Defendants filed a motion for summary judgment on all of Mr. Dahlstrom's alleged false claims. (MSJ (Dkt. # 64).) On July 8, 2019, Mr. Dahlstrom filed his response to Defendants' motion opposing each ground for summary

judgment. (SJ Resp. (Dkt. # 72).) On August 29, 2019, the court granted Defendants' motion for summary judgment and dismissed Mr. Dahlstrom's action with prejudice. (SJ Order (Dkt. # 79) at 2, 37.)

In his responsive memorandum to Defendants' motion for summary judgment, Mr. Dahlstrom described Dr. Morlock's medical practices as "dangerous," "worthless," "deleterious," "fraudulent," and "to the detriment of children, youth and their families, residing within and beyond the boundaries of the Sauk-Suiattle Indian Reservation." (SJ Resp. at 4.) He further accused Dr. Morlock of "actively and serially injecting [the Tribe's] children, youth and families," and other patients, with "spoiled" and "expired" vaccines. (*Id.* at 3.) He asserted that the Tribe's children were at risk from Dr. Morlock's "barbaric reaches" and that she "dangerously and with reckless abandon violated" those children. (*Id.* at 5.) Yet, despite this litany of scurrilous and potentially professionally-damaging allegations, Mr. Dahlstrom was unable to sustain a single false claim related to Dr. Morlock and the tribal vaccines. (*See* SJ Order at 19-22.) Mr. Dahlstrom's counsel of record, Mr. Pope, signed the responsive memorandum containing the foregoing statements. (*See* SJ Resp. at 24.)

Pursuant to 31 U.S.C. § 3730(d)(4) and RCW 74.66.070(d)(4), the court concluded in its summary judgment order that all of Mr. Dahlstrom's claims were "frivolous," "clearly vexatious," and "brought for the primary purpose of harassing and embarrassing . . . Defendants." (SJ Order at 34-36.) Accordingly, the court granted Defendants' motion for an award of reasonable attorney's fees and expenses against Mr. Dahlstrom and ordered Defendants to file, within fourteen days, a motion setting forth the

reasonable fees and expenses they incurred in bringing their motion for summary

judgment and conducting any necessary preceding discovery. (*Id.* at 36.) The court also

ordered Mr. Pope "to show cause why the court should not impose a portion of its

attorney's fees award, if any, against him personally pursuant to 28 U.S.C. § 1927,

[Federal] Rule [of Civil Procedure] 11(b), or its inherent authority." (*Id.* at 36-37.) The

court also permitted Defendants to respond to the court's order to show cause. (*Id.* at 37.)

On September 12, 2019, Mr. Dahlstrom and Mr. Pope filed a joint motion seeking

the court's permission for Mr. Pope to withdraw as Mr. Dahlstrom's attorney. (*See*

MTW.) On the same day, Mr. Dahlstrom filed a notice of Chapter 13 bankruptcy. (*See*

Bankr. Not.) In addition, Mr. Dahlstrom filed a motion seeking relief from the deadline

to file a *pro se* motion for reconsideration of the court's summary judgment order. (*See*

MFR.)

On September 12, 2019, Defendants filed a response to the court's June 6, 2019,

order to show cause. (Def. OSC Resp. (Dkt # 89); *see also* SJ Order at 36-37.)

Defendants assert that the court has the authority to impose sanctions in the form of an

award of fees against Mr. Pope personally for his conduct in this litigation, and they seek

an award of $25,000.00 against Mr. Pope personally. (*See generally id.*; *see also* 9/12/19

Nedderman Decl. (Dkt. # 90) ¶ 2, Ex. 1 (attaching a spreadsheet of Defendants' counsel's

billing records related to this matter).)

Mr. Pope filed his response to the court's order to show cause on September 26,

2019. (*See* Pope OSC Resp.) Mr. Pope opposes the entry of sanctions against him

//

personally.[1] (*See id.*)  In his defense, he argues that he "had nothing to do with the research, drafting or filing of Mr. Dahlstrom's pro se complaint."  (9/26/19 Pope Decl. (Dkt. # 100) ¶ 2.)  He states that he "certainly believed Mr. Dahlstrom's claims . . . to be valid when [he] entered [his] [n]otice of [a]ppearance."  (*Id.* ¶ 22.)  He also states that "Mr. Dahlstrom . . . agree[d] to assist with research, briefing and organization – which he disappointingly fell short on later in this litigation."  (*Id.*)  Mr. Pope does not indicate that he conducted any independent investigation into Mr. Dahlstrom's claims prior to accepting the representation and entering his notice of appearance in this suit.  (*See generally id.*)

As a part of his response to the court's order to show cause, Mr. Pope attests that he had an agreement with Mr. Dahlstrom whereby Mr. Dahlstrom would provide Mr. Pope with a draft response to Defendants' motion for summary judgment seven days prior to the filing deadline.  (*Id.* ¶ 25.)  Mr. Pope then planned to "refine" Mr. Dahlstrom's draft with his "own corrections, additional research and input, by the response deadline."  (*Id.*)  Mr. Pope blames Mr. Dahlstrom for "not timely doing his part of the work" and not providing Mr. Pope "with a draft response until 6:56 p.m. . . . just a few hours before the midnight filing deadline."  (*Id.* ¶ 26.)  Mr. Pope admits that he signed and filed Mr. Dahlstrom's draft "with very few corrections, much less

---

[1] In addition to his responsive memorandum, Mr. Pope also filed three declarations—two that address issues related to the parties' settlement negotiations and a third that is devoted to issues raised in the court's order to show cause.  (*See* Pope OSC Resp. at 1 (citing 9/12/19 Pope Decl. (Dkt. # 92); 9/25/19 Pope Decl. (Dkt. # 99); 9/26/19 Pope Decl. (Dkt. # 100)).)  In addition to Mr. Pope's responsive memorandum, the court has reviewed Mr. Pope's declarations in detail in determining the outcome of its order to show cause.

improvements." (*Id.* ¶ 28.)  He acknowledges that he only "lightly" edited and proofread Mr. Dahlstrom's draft.  (*Id.* ¶ 29.)  He again blames Mr. Dahlstrom by stating:  "If I had gotten ANYTHING for a draft in advance, I would have been able to do something a lot more useful."  (*Id.*)  He acknowledges being "very embarrassed," but states he "was in a situation where [he] basically had to file something."  (*Id.*)

Mr. Pope also acknowledges the reasonableness of the court's and Defendants' concerns about the language he uses in the summary judgment response regarding Dr. Morlock.  (*See id.* ¶ 56 ("Both the court and . . . Defendants (especially [Dr.] Morlock herself) are understandably not pleased with the language used to describe her involvement in the . . . vaccine program.").)  Indeed, he attests that he "very much regret[s] the tone and wording that . . . [he] used in relation to Dr. Morlock."  (*Id.* ¶ 58.)  He acknowledges that—had he not relied on Mr. Dahlstrom's draft and then failed to properly review the draft prior to filing—he would have used "quite substantially different wording."  (*Id.* ¶ 58.)

The court now addresses Mr. Dahlstrom's bankruptcy notice, the court's order to show cause concerning Mr. Pope, and Mr. Dahlstrom's motions.

## III.     ANALYSIS

### A.     Mr. Dahlstrom's Notice of Chapter 13 Bankruptcy

As noted above, Mr. Dahlstrom filed a notice of Chapter 13 bankruptcy on September 12, 2019.  (*See* Bankr. Not.)  Although the filing of a bankruptcy petition automatically stays an action or a proceeding "against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case," 11 U.S.C.

§ 362(a)(1), the automatic stay does not apply to actions brought by the debtor, nor does it "prohibit a defendant in an action brought by a plaintiff/debtor from defending itself in that action," *In re* Way, 229 B.R. 11, 13 (B.A.P. 9th Cir. 1998); *see also In re White*, 186 B.R. 700, 704 (B.A.P. 9th Cir. 1995); *In re Merrick*, 175 B.R. 333, 336, 338 (9th Cir. BAP 1994). Thus, Mr. Dahlstrom's notice does not act as a stay on these proceedings generally.

Nevertheless, pursuant to 31 U.S.C. § 3730(d)(4) and RCW 74.66.070(d)(4), the court previously ruled that Defendants are entitled to an award of their attorney's fees and expenses from Mr. Dahlstrom because his claims were frivolous, clearly vexatious, and brought for the primary purpose of harassing and embarrassing Defendants. (SJ Order at 34-36.) The court order ordered Defendants to file a motion detailing their reasonable fees and expenses no later than September 12, 2019. (8/30/19 Order (Dkt. # 82) at 2.) Following Mr. Dahlstrom's bankruptcy notice, Defendants were concerned that filing such a motion may be contrary to the automatic stay provided in 11 U.S.C. § 362. (Def. OSC Resp. at 2-3 & n.2.) Accordingly, Defendants did not file and note their motion on the court's docket but rather attached it as an exhibit to a declaration. (*See id.*; *see also* 9/12/19 Nedderman Decl. (Dkt. # 90) ¶ 12, Ex. 6 (attaching a copy of Defendants' fees motion).)

The court agrees that, although the automatic bankruptcy stay does not apply to this action generally, it does apply to any motion for fees and expenses against Mr. Dahlstrom. *See Morawski v. Lightstorm Entm't, Inc.*, No. CV 11-10294 MMM (JCGx), 2013 WL 12122290, at *2 (C.D. Cal. Aug. 7, 2013) ("[C]ourts frequently stay claims for

costs against losing plaintiffs who subsequent seek protection in bankruptcy court.")

(citing *Conley v. Pitney Bowes, Inc.*, 978 F. Supp. 892, 902 (E.D. Mo. 1997) (noting that

"although [the prevailing defendant's claim for costs was] part of a proceeding initiated

by plaintiff," the claim for costs could "be construed as a judicial proceeding against a

debtor")).  Accordingly, the court stays its consideration of Defendants' motion until the

bankruptcy stay is lifted.  The court further ORDERS the parties to notify the court

within seven (7) days of any change in the status of Mr. Dahlstrom's bankruptcy

proceeding that would lift the automatic stay and permit the court to consider

Defendants' motion for fees and expenses against Mr. Dahlstrom.

**B.      The Court's Order to Show Cause Concerning Mr. Pope**

In response to the court's order to show cause, Defendants assert that the court has

the authority to impose sanctions in the form of an award of fees against Mr. Dahlstrom's

attorney, Mr. Pope, under (1) Federal Rule of Civil Procedure 11(b), (2) 28 U.S.C.

§ 1927, and (3) the court's inherent authority to levy sanctions.  (Def. OSC Resp. at 3-5.)

Mr. Pope opposes the imposition of any sanctions.  (*See generally* Pope OSC Resp.)  The

court now considers whether to levy sanctions against Mr. Pope.

1.      Mr. Dahlstrom's Bankruptcy

Preliminarily, Mr. Dahlstrom and Mr. Pope assert that Mr. Dahlstrom's

bankruptcy filing also operates as an automatic stay of actions to collect monies allegedly

owed by a co-debtor of Mr. Dahlstrom.  (*See* Bankr. Not. at 2.)  Mr. Dahlstrom and Mr.

Pope assert that Mr. Pope is such a co-debtor for purposes of the court's order to show

cause why it should not impose sanctions against Mr. Pope for his conduct in this

litigation.  (*See id.*; *see also* MFR at 3 ("Under 11 U.S.C. § 1301, since this bankruptcy proceeding is filed under Chapter 13, there would also generally be an automatic stay of actions to enforce or collect monies allegedly owed by a co-debtor of Mr. Dahlstrom.").) Section 1301 of the Bankruptcy Code "enjoins a creditor from taking legal action to 'collect all or part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor.'" *In re Thongta*, 401 B.R. 363, 366 (Bankr. E.D. Wis. 2009) (quoting 11 U.S.C. § 1301).  However, the Chapter 13 codebtor stay does not come into play where the debt at issue is not a consumer debt.  *In re Nicolas*, No. 02-00211, 2002 WL 32332461, at *2 (Bankr. D. Haw. Mar. 22, 2002) (citing *In re Westberry*, 215 F.3d 589 (6th Cir. 2000) (holding income and withholding tax debt is not a consumer debt)). Section 101(8) of the Bankruptcy Code defines "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose." *In re Stovall*, 209 B.R. 849, 852 (Bankr. E.D. Va. 1997) (quoting 11 U.S.C. § 101(8)).  Indeed, the statute specifically excludes from protection codebtors who "became liable on or secured such debt in the ordinary course of such individual's business." 11 U.S.C. § 1301(a)(1).  As discussed below, the court concludes that Mr. Pope is liable for a portion of Defendants' attorney's fees as a sanction for his litigation conduct herein.  *See infra* §§ III.B.2, 3.  Mr. Pope incurs the fees the court awards, however, not as consumer debt, but in the course of his work as an attorney.  Further, because the court awards the fees as a sanction against Mr. Pope, personally, for his bad faith conduct in this litigation, Mr. Dahlstrom is

//

//

1    not liable for any portion of the sanction the court imposes against Mr. Pope.[2]  Thus, the

2    court concludes that the Chapter 13 codebtor stay is not applicable to Mr. Pope here.

3          2. <u>Sanctions against Mr. Pope</u>

4          The court now addresses whether it should impose sanctions against Mr. Pope

5    personally for his conduct in this litigation in the form of an award of fees to Defendants.

6          *a.  Standards to Impose Sanctions*

7          Under certain circumstances, a court may award sanctions against an attorney

8    pursuant to 28 U.S.C. § 1927.  Section 1927 states:

9          Any attorney or other person admitted to conduct cases in any court of the
            United States or any Territory thereof who so multiplies the proceedings in
10        any case unreasonably and vexatiously may be required by the court to
            satisfy personally the excess costs, expenses, and attorneys' fees reasonably
11        incurred because of such conduct.

12    28 U.S.C. § 1927.  To support an award of fees under this provision, Mr. Pope must have

13    acted in subjective bad faith, which is present if he "knowingly or recklessly raise[d] a

14    frivolous argument, or argue[d] a meritorious claim for the purpose of harassing an

15    opponent."  *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).

16    "[R]eckless nonfrivolous filings, without more, may not be sanctioned" under § 1927.

17    *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (quoting *Keegan*, 78

18    F.3d at 436).  Thus, the court may award fees against Mr. Pope for bad faith under 28

19    //

20    //

21

22          [2] As discussed above, the court stays any consideration of an award of fees and expenses
against Mr. Dahlstrom until the automatic bankruptcy stay is lifted.  *See supra* § III.A.

U.S.C. § 1927 if the court finds that Mr. Pope acted recklessly in filing or advancing

frivolous arguments.[3] *Id.*

Independent of its statutory authority, the court may also award attorney's fees

when a party or an attorney has acted in bad faith pursuant to its inherent authority. *See*

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *Roadway Express, Inc. v. Piper*,

447 U.S. 752, 766 (1980). The court's authority to impose sanctions under 28 U.S.C.

§ 1927 exists alongside the court's inherent power to award fees under equity when

justice requires. *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1340 (9th Cir. 1984).

As the Supreme Court recently clarified, any attorney's fees awarded under the district

court's inherent power must be "limited to the fees the innocent party incurred solely

because of the misconduct." Under the court's inherent power, sanctions are available if

the court finds either bad faith or "conduct tantamount to bad faith." *B.K.B.*, 276 F.3d at

1108 (quoting *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (internal quotation

marks omitted). Indeed, "[s]anctions are available for a variety of types of willful

actions, including recklessness when combined with an additional factor such as

frivolousness, harassment, or an improper purpose." *Id.* (quoting *Fink*, 239 F.3d at 994

(internal quotation marks omitted). Thus, similar to its authority under 28 U.S.C. § 1927,

the court may impose an award of fees against Mr. Pope under the court's inherent

//

//

---

[3] Section 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun."
*Keegan*, 78 F.3d at 435. Section 1927 does not apply to the filing of an initial pleading. *Id.*

authority if the court finds that Mr. Pope acted recklessly combined with advancing

frivolous arguments.[4]

The decision to impose sanctions rests in the sound discretion of the district court. *See, e.g., Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1996) (district court abused its discretion by not awarding § 1927 sanctions); *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1121 (9th Cir. 1991) (holding that the district court abused its discretion by awarding § 1927 sanctions). The court must tailor any sanctions awarded either under 28 U.S.C. § 1927 or the court's inherent power to the particular conduct at issue. *See, e.g., United States v. Blodgett*, 709 F.2d 608, 610-11 (9th Cir. 1983) ("Section 1927 only authorizes the taxing of excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct. Similarly, cases that have considered the district court's inherent power to sanction attorneys for litigating in bad faith have related such sanctions to the amount of fees incurred by the opposing party.") (internal citations omitted).[5]

---

[4] Because the court concludes that the imposition of sanctions is appropriate under 28 U.S.C. § 1927 and its inherent authority, the court does not consider whether to impose sanctions under Federal Rule of Civil Procedure 11.

[5] "[A]n attorney subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard." *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999). An oral or evidentiary hearing is not required. *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). An opportunity to fully brief the issue fully satisfies any due process requirement in this context. *Id.* (citing *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir.1995)). Here, the court provided Mr. Pope with notice and an opportunity to both brief the issues and provide evidentiary materials. (*See* SJ Order at 36-37 (detailing order to show cause); 8/30/19 Order at 1-2 (granting Mr. Pope additional time to

*b. Sanctions Analysis*

As the foregoing authorities demonstrate, under either 28 U.S.C. § 1927 or the court's inherent power, the court may impose sanctions against Mr. Pope for bad faith conduct if the court finds that Mr. Pope acted recklessly in combination with making frivolous filings or advancing frivolous arguments. *See B.K.B.*, 276 F.3d at 1107 (discussing 28 U.S.C. § 1927); *id.* at 1108 (discussing the court's inherent power).

The court has already concluded that Mr. Dahlstrom's claims were frivolous. (SJ Order at 35.) Although Mr. Pope attests that he believed Mr. Dahlstrom's claims were valid when he appeared in this suit (9/26/19 Pope Decl. ¶ 22), the record is devoid of information concerning whether Mr. Pope conducted any independent investigation into Mr. Dahlstrom's claims prior to agreeing to represent Mr. Dahlstrom (*see generally id.*). Nevertheless, the parties exchanged extensive discovery. (*See* Def. OSC Resp. at 5-7 (describing discovery and the parties' discovery disputes); 9/26/19 Pope Decl. ¶¶ 45-46, 50-55 (same).) Mr. Pope took the depositions of four witnesses, and Defendants deposed Mr. Dahlstrom over the course of several days. (9/26/19 Pope Decl. ¶ 50.) In addition, Mr. Pope issued subpoenas to third-parties and tribal officials. (*See id.* ¶¶ 47, 54-55.) Defendants also produced written response to Mr. Dahlstrom's interrogatories. (*See id.* ¶ 46, Ex. 5.) Thus, even if Mr. Pope did not understand Mr. Dahlstrom's claims to be frivolous at the time he filed his notice of appearance, by the end of the discovery period, //

respond to the court's order to show cause).) Mr. Pope provided both. (*See generally* Pope OSC Resp.; *see also* 9/12/19 Pope Decl.; 9/25/19 Pope Decl.; 9/26/19 Pope Decl.)

he should have understood this to be the case.[6]  Indeed, at that point, Mr. Pope should

have known there was insufficient evidence to establish all the elements of even one of

Mr. Dahlstrom's alleged false claims.[7]  (*See generally* SJ Order.)

The court's finding that Mr. Pope advanced frivolous arguments alone, however,

is insufficient to impose sanctions under 28 U.S.C. § 1927 or the court's inherent

authority.  The remaining question for the court is whether Mr. Pope did so "recklessly."

*See B.K.B.*, 276 F.3d at 1107 ("'[F]or [28 U.S.C. § 1927] sanctions to apply, if a filing is

submitted recklessly, it must be frivolous . . . .'") (quoting *In re Keegan Mgmt. Co., Sec.

Lit.*, 78 F.3d 431, 436 (9th Cir. 1996)); *id.* at 1108 ("Sanctions [under the court's inherent

//

---

[6] Mr. Pope complains throughout his declaration that Defendants failed to provide discovery that he requested.  (*See, e.g.*, 9/26/19 Pope Decl. ¶ 48 ("Defendants had 'lay down' discovery obligations under Rule 26 . . . that they utterly failed to comply with.  Defendants also totally avoided complying with Mr. Dahlstrom's affirmative discovery requests.").  He asserts that '[t]his prevented discovery that might have shown the suit to lack factual basis." (*Id.*)  However, Mr. Pope admits that he never raised the issue of Defendants' alleged discovery conduct with the court.  (*See id.* ¶ 50(a) ("Mr. Dahlstrom did not ever move to compel discovery . . . ."); *see also generally* Dkt.)  Mr. Pope cannot now attempt to justify his conduct based on Defendants' alleged discovery practices when he failed to timely alert the court of those alleged practices.

[7] Further, as noted in the court's summary judgment order, the responsive memorandum, signed by Mr. Pope, was difficult to follow at best and his citations to the record were often in error or simply referred to conclusory allegations in Mr. Dahlstrom's declaration or to other irrelevant or inadmissible evidence.  (*See, e.g.*, SJ Order at 7, 19-27, & n.12; *see generally* SJ Resp.)  Although Mr. Pope filed over 1,700 pages of declarations and accompanying exhibits in opposition to Defendants' summary judgment motion, he cited to only a small portion of any of these documents in the responsive memorandum, and as already noted, many of these citations were erroneous.  (*See* SJ Order at 7; *see generally* SJ Resp.)  These facts also support the court's conclusion that Mr. Dahlstrom's opposition to Defendants' summary judgment motion was a frivolous filing.  *See, e.g.*, *Limerick v. Greenwald*, 749 F.2d 97, 101 (1st Cir. 1984) ("Counsel's course of conduct in filing hundreds of pages of irrelevant documents, in citing to dozens of cases unrelated to the real issues in these appeals," along with other conduct, "has been at least irresponsible and has come perilously close to an abuse of process.").

power] are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness.").

The court easily finds that Mr. Pope acted recklessly in advancing Mr. Dahlstrom's frivolous claims based on Mr. Pope's own declaration. Mr. Pope testifies that he had an "agreement" with Mr. Dahlstrom that Mr. Dahlstrom would provide a draft response [to Defendants' motion for summary judgment] . . . seven days before the response was due." (9/26/19 Pope Decl. ¶ 25.) Mr. Pope further testifies that Mr. Dahlstrom failed to provide him with a draft response until just a few hours before the filing deadline. (*Id.* ¶ 26.) Mr. Pope testifies that he "was effectively forced to file what should have been a draft, with very few correction, much less improvements, . . . with almost no time at all to do anything about it." (*Id.* ¶ 28.) He attests that he "literally did not have any time or energy to put into the motion response project at that point, other than some very light editing and proofreading." (*Id.* ¶ 29.) Mr. Pope blames Mr. Dahlstrom for this state of affairs—stating that if he "had gotten ANYTHING for a draft in advance," he "would have been able to do something a lot more useful." (*Id.*) Mr. Pope acknowledges his embarrassment but states he "was in a situation where [he] basically had to file something," so he signed and filed a memorandum with minimal review that was written and researched almost entirely by his own client—someone who is not an attorney. (*See id.*)

Mr. Pope behaved recklessly in every aspect of how he handled this situation. He apparently never independently evaluated the strength of Defendants' summary judgment motion or his client's own claims in light of that motion. He delegated the review and

assessment of Defendants' summary judgment motion and the lion's share of the researching and drafting of his client's response to his client. Mr. Pope blames his inability to review the draft on his client's lack of timeliness, but Mr. Pope should have never delegated this much responsibility to a non-lawyer in the first place.[8] To provide an initial draft of the response, Mr. Dahlstrom would have had to assess Defendants' legal positions in the summary judgment motion, conduct legal research, evaluate case authority, and assess the strength of his own claims considering the legal authority Defendants cited and the facts they had marshalled. A lay individual is not qualified to perform these quintessential legal tasks—especially in a *qui tam* action where a plaintiff is not permitted to proceed *pro se*. *See Stoner*, 502 F.3d at 1127. There is certainly no evidence in the record that Mr. Dahlstrom is so qualified. In any event, Mr. Pope acted in an entirely reckless manner when he signed and filed a summary judgment response, written by a lay individual, that by his own admission he barely had time to review. The conduct that Mr. Pope acknowledges in his own declaration is the epitome of recklessness.

In addition, the scurrilous statements about Dr. Morlock and other Defendants that are contained in the responsive memorandum further demonstrate Mr. Pope's reckless conduct. The court previously described these statements in detail and will not repeat

//

//

---

[8] Indeed, the court is deeply disturbed by Mr. Pope's attempt to deflect blame for his own conduct onto his client.

them here.[9]  *See supra* § II; (*see also* SJ Order at 35-36).  Although Mr. Dahlstrom may have been aware that these statements were in the responsive memorandum, it appears that Mr. Pope—despite his signature on the document—was not.  (*See* 9/26/19 Pope Decl. ¶ 58 ("I very much regret the tone and wording that was used in relation to Dr. Morlock.  Had I written the summary judgment response brief from scratch, or had I the time . . . to properly revise and edit a response draft . . . , quite substantially different wording would have been used.").)[10]  The fact that Mr. Pope signed the responsive memorandum without being aware that it contained these statements, and then subsequently repudiated those same statements and acknowledged that he would have used "substantially different" words if he had written the memorandum, is further incriminating evidence of Mr. Pope's reckless conduct.  (*See id.*)

Courts have entered sanctions against attorneys for conduct similar to—albeit less egregious than—Mr. Pope's conduct here.  Indeed, simply failing to withdraw a claim once it is clear that the claim is meritless can form the basis for sanctions under 28 U.S.C. § 1927.  *See Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x 222, 225-26 (4th Cir. 2008) (finding that sanctions under 28 U.S.C. § 1927 are appropriate when a party persists in

---

[9] In its summary judgment order, the court concluded that these statements demonstrated that Mr. Dahlstrom's claims "were clearly vexatious and brought for the primary purpose of harassing and embarrassing . . . Defendants."  (SJ Order at 36.)

[10] Mr. Pope asserts in his declaration that "there is substantial evidence in the record . . . to support a negative portrayal of Dr. Morlock's participation in the vaccination program, consistent with the factual arguments made in the response brief."  (9/26/19 Pope Decl. ¶ 59; *see also* Pope OSC Resp. at 5.)  The court has reviewed the citations to the record that Mr. Pope provides in his declaration and his response to the court's order to show cause and concludes that none support the specific statements at issue here.

litigating a case once its lack of merit becomes evident). In upholding the district court's

award of § 1927 sanctions, the *Salvin* court found that "by refusing to voluntarily dismiss

the case once its lack of merit became evident, [the plaintiff] protracted the litigation."

*Id.* "[The defendant] was forced to continue with its discovery obligation, file a summary

judgment motion, and respond to [the plaintiff's] opposition to the motion." *Id.*

Likewise, when Mr. Pope failed to withdraw or voluntarily dismiss Mr.

Dahlstrom's claims once it should have become clear through discovery that they were

meritless, thereby forcing Defendants to file a motion for summary judgment, and when

Mr. Pope signed and filed the opposition memorandum to Defendants' motion for

summary judgment, thereby forcing Defendants to file a reply to his opposition, Mr. Pope

was advancing frivolous arguments and unreasonably and vexatiously multiplying these

proceedings. *See also Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426,

443-44 (9th Cir. 2017) (upholding the district court's imposition of 28 U.S.C. § 1927

sanctions where "with knowledge that its . . . claim was meritless, [the plaintiff] failed to

withdraw the claim and opposed [the defendant's] motion to strike the claim") (internal

quotation marks omitted); *Cook Benjamin v. MHM Corr. Servs., Inc.*, 57 1F. App'x 944,

949 (11th Cir. 2014) (upholding the district court's imposition of 28 U.S.C. § 1927

sanctions because "counsel's steadfast refusal to drop these [meritless] claims until the

response to the defendants' summary judgment motion unnecessarily and unreasonably

multiplied the litigation"). Because the court finds that Mr. Pope acted recklessly in his

conduct of this litigation and in conjunction with his reckless conduct advanced frivolous

//

1  arguments and made a frivolous filing, the court concludes that it should award fees

2  against Mr. Pope for bad faith under both 28 U.S.C. § 1927 and its inherent authority.

3          *c. Potential Mitigating Circumstances*

4         Before determining the amount of the fee award, the court addresses potentially

5  mitigating circumstances that Mr. Pope describes in his declaration and his response to

6  the court's order to show cause.  (*See* 9/26/19 Pope Decl. ¶¶ 8-9, 12-19, 24, 27, 30-32,

7  49, 74; *see also* Pope OSC Resp. at 5, 9-10.)  Mr. Pope describes a serious health care

8  crisis affecting his daughter that limited his ability to represent Mr. Dahlstrom from

9  approximately May 2017 to May 2018, and approximately the end of 2018 through

10  September 2019.  (*See id.* ¶¶ 7, 10, 23-24, 27, 30-31, 49.)  Mr. Dahlstrom testifies that his

11  daughter's health care crisis placed him in "a nearly impossible situation," took "massive

12  amounts of . . . time and even greater amounts of mental energy, away from [his] law

13  practice," and at times made it "very difficult to get any work done at all" or "nearly

14  impossible . . . to work on much of anything."  (9/26/19 Pope Decl. ¶¶ 21, 23, 24, 32.)  In

15  short, Mr. Pope states that he was "personally handicapped" by his daughter's health care

16  crisis and asks the court to take this circumstance into account when considering the

17  imposition of sanctions.  (*Id.* ¶¶ 49, 74; *see also* Pope OSC Resp. at 5 (describing Mr.

18  Pope's family issues as "crippling").)

19         Unfortunately, Mr. Pope did not notify the court concerning his daughter's

20  situation until shortly after the court entered summary judgment in favor of Defendants.

21  (*See* 8/29/19 Mot. (Dkt. # 80) at 2-3 (notifying the court of a serious health crisis

22  involving Mr. Pope's daughter); *see also* SJ Order (filed earlier that same day).)  If Mr.

Pope had notified the court earlier of his asserted incapacity, the court could have considered a stay of the proceedings for a short period to allow Mr. Dahlstrom to find alternate or additional counsel.[11] Although the court is sympathetic to Mr. Pope's situation, given these circumstances, the court finds that Mr. Pope again acted recklessly when he continued to represent Mr. Dahlstrom without at a minimum informing the court of his situation and obtaining co-counsel to assist him.

In addition, despite Mr. Pope's assertion of his near professional incapacity during his daughter's health care crisis, the court notes that he nevertheless appeared in three additional lawsuits in the Western District of Washington during that same period. *See United States ex rel. Dahlstrom v. Sunrise Services, Inc., et al.*, No. C18-1561RSL (W.D. Wash.), Dkt. # 1 (complaint alleging False Claim Act claims filed by Mr. Pope on behalf of Mr. Dahlstrom filed on October 23, 2018); *Nat'l Ins. Crime Bureau v. Wagner, et al.*, No. C19-0730JLR (W.D. Wash.), Dkt. # 10 (notice of appearance by Mr. Pope on behalf of a defendant in an interpleader action filed on June 9, 2019); *Jenkins v. Puckett and Redford, PLLC, et al.*, No. C19-1550BJR (W.D. Wash.), Dkt. # 1 (complaint alleging Fair Debt Collection Practices Act claims, among others, filed by Mr. Pope on September 26, 2019). Given Mr. Pope's failure to obtain co-counsel or timely inform the court of his incapacity due to his daughter's circumstances, and given Mr. Pope's apparent ability

//

---

[11] Indeed, on June 13, 2019, Mr. Pope asked for additional time to respond to Defendants' motion for summary judgment, which the court granted in part, but he never mentioned his daughter's ongoing health crisis at that time. (*See* 6/13/19 Mot. (Dkt. # 68); *see also* 6/14/19 Order (Dkt. # 69).)

to engage in additional cases during that same period, the court declines to excuse or mitigate Mr. Pope's conduct based on his daughter's health care crisis.

### 3. Amount of Fee Award

Defendants seek an award of fees against Mr. Pope in the amount of $25,000.00. (Def. OSC Resp. at 10.)  This sum represents an approximate 26.9% voluntary discount from the $34,217.45 total fees and expenses Defendants incurred conducting written discovery, taking and defending depositions, and preparing and prosecuting Defendants' motion for summary judgment.  (*See* 9/12/19 Nedderman Decl. ¶ 2, Ex. 1.)  For preparing and prosecuting the summary judgment motion only, Defendants incurred fees totaling $14,711.00.  (*See id.*)

If an award of attorney's fees is appropriate under 28 U.S.C. § 1927, the court must first determine how much of the attorney's fees are due to "excessive" litigation. *See In re Yagman*, 796 F.2d 1165, 1184-85 (9th Cir. 1986); *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1347-48 (9th Cir.1985); *Larin Corp. v. Alltrade, Inc.*, No. EDCV 06-1394 ODW OPX, 2008 WL 2745881, at *4 (C.D. Cal. July 11, 2008), *aff'd sub nom. Larin Corp. v. Mueller*, 364 F. App'x 380 (9th Cir. 2010). Then, the "excess" amount is evaluated for reasonableness.  *See In re Yagman*, 796 F.2d at 1184-85; *Larin Corp.*, 2008 WL 2745881, at *4.

Reasonable attorney's fees are determined by following a two-part "lodestar" approach.  *See Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  First, the court must determine the presumptive lodestar figure by multiplying the number of hours a party reasonably

1   expended on the litigation by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433.  This

2   lodestar figure may then be adjusted upward or downward after consideration of the

3   factors recited in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), that

4   are not already subsumed in the initial lodestar calculation, *Morales v. City of San Rafael*,

5   96 F.3d 359, 363-364 & nn. 8-10 (9th Cir. 1996).[12]  Additionally, the district court has

6   the authority to make across-the-board percentage cuts either in the number of hours

7   claimed or in the final lodestar figure.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1399

8   (9th Cir. 1992) (ruling that "when faced with a massive fee application the district court

9   has the authority to make across-the-board percentage cuts either in the number of hours

10   claimed or in the final lodestar figure"); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145,

11   1150 & n.7 (9th Cir. 2001) (applying "the *Gates* approach without regard to the size of

12   the award so long as "the district court provides a reasonable explanation for the

13   [across-the-board] cut").  Regardless of the calculation approach, the court is "required to

14   explain the reasons for its fee award."  *Gates*, 987 F.3d at 1400.

15   *//*

16   *//*

---

17   [12] The twelve *Kerr* factors bearing on reasonableness are:

18   (1) the time and labor required, (2) the novelty and difficulty of the questions
involved, (3) the skill requisite to perform the legal service properly, (4) the
19   preclusion of other employment by the attorney due to acceptance of the case, (5)
the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations
20   imposed by the client or the circumstances, (8) the amount involved and the results
obtained, (9) the experience, reputation, and ability of the attorneys, (10) the
21   "undesirability" of the case, (11) the nature and length of the professional
relationship with the client, and (12) awards in similar cases.

22   *Kerr*, 526 F.2d at 70.

First, the court determines which of Defendants' fees are due to Mr. Pope's "excessive" litigation. *See In re Yagman*, 796 F.2d at 1184-85. The court declines to impose any fees Defendants incurred conducting discovery and will limit its award to those fees Defendants incurred in drafting and prosecuting their motion for summary judgment. Based on the current record, the court concluded that following discovery Mr. Pope should have understood that Mr. Dahlstrom's claims were frivolous. *See supra* § III.B.2.b. Thus, the court cannot conclude that the fees Defendants incurred in discovery were "excess." *See* 28 U.S.C. § 1927. The court, therefore, limits its sanctions award against Mr. Pope to those fees Defendants incurred in drafting and prosecuting their motion for summary judgment.

The presumptive lodestar amount for the fees Defendants incurred in drafting and prosecuting their motion for summary judgment is $14,711.00. (*See* 9/12/19 Nedderman Decl. ¶ 2, Ex. 1.) The court has reviewed the number of hours Defendants' attorneys spent drafting and prosecuting this motion[13] and the hourly rates charged by the attorneys conducting this work[14] and concludes that both are reasonable. In determining the reasonableness of attorneys' hourly rates, the court looks to the "prevailing market rates in the relevant community." *Bell v. Clackamas Cty.*, 341 F.3d 858, 868 (9th Cir. 2003). In doing this analysis, the court is permitted to rely upon its own knowledge and

---

[13] (*See* 9/12/19 Nedderman Decl. ¶¶ 2 (authenticating Exhibit 1), 6 (verifying contemporaneous or near-contemporaneous billing policy), Ex. 1 (indicating at total of 88.8 hours spent in researching and drafting the motion and reply memorandum and otherwise prosecuting the summary judgment motion).)

[14] (*See id.* ¶¶ 3-4 (indicating attorney rates ranging from $165-185 per hour).)

familiarity with the relevant legal market. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). The rates charged by Defendants' attorneys, given their experience and skills, are reasonable for Seattle-based attorneys. *See, e.g.*, *Seattle Times Co. v. LeatherCare, Inc.*, No. C15-1901 TSZ, 2019 WL 1651664, at *2 (W.D. Wash. Apr. 17, 2019) (concluding "that rates ranging from $260 to $380 per hour are reasonable"); *Head v. Home Depot, U.S.A., Inc.*, No. 18-5892 RJB, 2019 WL 1572369, at *4 (W.D. Wash. Apr. 11, 2019) (concluding that hourly rates of $225.00 for a partner and $175.00 for senior associate are reasonable).

The court also concludes that the 88.8 hours Defendants spent in researching, drafting, and prosecuting their motion for summary judgment were reasonable. The court has carefully reviewed Defendants' time entries related to their motion for summary judgment. (*See* 9/12/19 Nedderman Decl. ¶ 2, Ex. 1.) Mr. Dahlstrom alleged seven (7) false claims under the FCA (*see* SJ Order at 8-29 (analyzing and granting summary judgment on these claims)); a claim under the Washington Medicaid FCA (*see id.* at 29-31 (analyzing and granting summary judgment on this claim)); and claims for retaliation under both the FCA and the Washington Medicaid FCA (*see id.* at 31-34 (analyzing and granting summary judgment on these claims)). In addition, the court found that the summary judgment response "was difficult to follow," violated the court's rules concerning formatting and length of briefs, and contained numerous erroneous citations to the record. (SJ Order at 7.) Further, although Mr. Pope filed over 1,700 pages of declarations and accompanying exhibits on behalf of Mr. Dahlstrom in response to Defendants' summary judgment motion, he cited to only a small portion of these

documents in the accompanying memorandum.  (*Id.*)  Indeed, the court found that his responsive memorandum, "'obfuscate[d] rather than promote[d] an understanding of the facts.'"  (*Id.* at 8 (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)).)  Given the number of complex claims Mr. Dahlstrom alleged and the difficulties posed by Mr. Pope's filings on behalf of Mr. Dahlstrom in response to Defendants' motion, the court considers 88.8 hours to be a reasonable amount of time for Defendants' to have spent prosecuting their motion for summary judgment.

The court has also considered the *Kerr* factors that were not already subsumed in the foregoing lodestar calculation, *see Morales*, 96 F.3d at 363-364 & nn. 8-10; *see also Kerr*, 526 F.2d at 70, but declines to make any adjustment, either upward or downward, based on those factors.  Instead, the court opts to reduce the amount of fees Defendants incurred with respect to the summary judgment motion by the same overall percentage reduction that Defendants volunteered with respect to their entire fee claim.  Defendants offered an approximate 26.9% voluntary reduction for the entirety of their claimed fees.  (*Compare* 9/12/19 Nedderman Decl. ¶ 2, Ex. 1 (detailing $34,217.45 in fees and expenses incurred in discovery and summary judgment activities) *with* Def. OSC Resp. at 10 (claiming a reduced award of $25,000.00).)  The court sees no reason not to grant the same percentage of voluntary reduction to the sanction awarded against Mr. Pope.  Accordingly, although Defendants incurred $14,711.00 in fees related to their motion for summary judgment, the court awards only $10,753.74 in fees against Mr. Pope, which represents a 26.9% discount.

//

**C.     Motions to Withdraw as Counsel for Mr. Dahlstrom and for Relief from the Deadline to File a Motion for Reconsideration**

Mr. Dahlstrom and Mr. Pope jointly move for an order permitting Mr. Pope to withdraw as counsel for Mr. Dahlstrom.  (*See generally* MTW.)  Given the circumstances of this case and Mr. Dahlstrom's letter asking Mr. Pope to withdraw, the court grants the motion and permits Mr. Pope to withdraw as Mr. Dahlstrom's counsel of record.  However, Mr. Pope may not remove himself from the docket in this case.  The court has awarded sanctions against him in the form of a portion of Defendants attorney's fees.  *See supra* §§ III.B.2., 3.  Accordingly, at this time, Mr. Pope will remain as an attorney to be noticed on the court's docket until this matter is closed or the court orders otherwise.

Mr. Dahlstrom also moves for relief from the deadline to file a *pro se* motion for reconsideration of the court's summary judgment order.  (*See generally* MFR; *see also* SJ Order.)  Mr. Dahlstrom apparently attempted to file a *pro se* motion for reconsideration of that order but was denied access to the court's docketing system because he was still represented by Mr. Pope at that time.  (*See* MFR, Ex. 2 (Dkt. # 87-2) at 1 (attaching a letter dated September 11, 2019, from Mr. Dahlstrom to Mr. Pope, stating:  "Several days ago I attempted to request access to the Court's [electronic] filing system, but my request was summarily rejected by the Clerk's office . . . citing that I was still represented by counsel.")); *see also* Local Rules W.D. Wash. LCR 83.2(b)(5) ("When a party is represented by an attorney of record in a case, the party cannot appear or act on his or her own behalf in that case, or take any step therein, until after the party requests by motion to proceed on his or her own behalf, certifies in the motion that he or she has provided

copies of the motion to his or her current counsel and to the opposing party, and is granted an order of substitution by the court terminating the party's attorney as counsel and substituting the party in to proceed pro se."). Mr. Pope declined to sign Mr. Dahlstrom's *pro se* motion for reconsideration (*see* MFR at 2 ("Mr. Pope, for his own part, is simply not willing to sign Mr. Dahlstrom's pro se motion.")) and also apparently declined to draft and file a motion for reconsideration on his client's behalf (*see generally* Dkt.). Thus, Mr. Dahlstrom seeks an extension of time to file his *pro se* motion for reconsideration until 14 days after (1) entry of an order permitting Mr. Pope to withdraw as his counsel and permitting Mr. Dahlstrom to proceed *pro se*, or (2) entry of an order terminating the automatic bankruptcy stay. (*See* MFR at 1.)

As Defendants point out and the court previously explained, Mr. Dahlstrom may not prosecute his FCA claims as a *pro se* litigant. (*See* MFR Resp. (Dkt. # 94) at 3 (citing *Stoner*, 502 F.3d at 1127); *see also* 1/22/16 OSC at 1-2 (citing *Stoner*, 502 F.3d at 1127).) In *Stoner*, the Ninth Circuit ruled that a *pro se* plaintiff may not prosecute a *qui tam* action. 502 F.3d at 1127. Thus, the court declines to grant an extension of time for Mr. Dahlstrom to file his *pro se* motion for reconsideration. Nevertheless, the court will grant Mr. Dahlstrom 30 days to retain alternate counsel to represent him and to file a motion for reconsideration of the court's summary judgment motion, if appropriate. *See id.* at 1128 (instructing the district court on remand to give the *pro se* plaintiff in the *qui tam* action "reasonable time to find counsel"). Accordingly, the court grants Mr. Dahlstrom

//

//

30 days from the filing date of this order to retain alternate counsel and to file a motion for reconsideration of the court's summary judgment order, if appropriate.[15]

## IV. CONCLUSION

Based on the foregoing analysis, the court ORDERS as follows:

(1) Mr. Dahlstrom's notice of bankruptcy (Dkt. # 84) operates as an automatic stay on the court's determination of the amount of attorney's fees and expenses to which Defendants are entitled to recoup from Mr. Dahlstrom pursuant to the court's summary judgment order (*see* SJ Order at 34-36, 38). Mr. Dahlstrom's notice of bankruptcy does not operate as an automatic stay on any other portion of this litigation. The parties shall notify the court within seven (7) days of any change in the status of Mr. Dahlstrom's bankruptcy proceeding that would lift the automatic stay and permit the court to consider Defendants' motion for fees and expenses against Mr. Dahlstrom;

(2) Pursuant to the court's order to show cause (*see id.* at 36-38) and the parties' responses thereto (Dkt. ## 89, 101), and pursuant to 28 U.S.C. § 1927 and its inherent

//

---

[15] The court notes that Mr. Pope attached a copy of Mr. Dahlstrom's *pro se* motion for reconsideration that Mr. Dahlstrom attempted but was unable to file on the court's docket to the motion for relief from a deadline. (*See* MFR, Ex. 1 (Dkt. # 87-1) (attaching copy of Mr. Dahlstrom's *pro se* motion for reconsideration).) The court has reviewed Mr. Dahlstrom's proposed *pro se* motion and concludes that it does not meet the standards set forth in Local Civil Rule 7(h)(1) for granting a motion for reconsideration. *See* Local Rules W.D. Wash. LCR 7(h)(1) ("Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence."). Thus, even if the court were to permit Mr. Dahlstrom to file his *pro se* motion for reconsideration, the court would deny the motion. Nevertheless, the court grants Mr. Dahlstrom 30 days to retain alternate counsel so that he may file a motion for reconsideration, if warranted, with the assistance of counsel.

1  power, the court ORDERS Mr. Pope to pay Defendants' reasonable attorney's fees of

2  $10,753.74;

3      (3) Mr. Dahlstrom and Mr. Pope's agreed motion for Mr. Pope to withdraw as

4  counsel of record for Mr. Dahlstrom (Dkt. # 83) is GRANTED.  However, because the

5  court has entered sanctions against Mr. Pope in the form of a portion of Defendants'

6  reasonable attorney's fees, the court ORDERS Mr. Pope to remain on the docket as an

7  attorney to be noticed in this matter and DIRECTS the Clerk to maintain Mr. Pope on the

8  court's docket; and

9      (4) Mr. Dahlstrom's motion for an extension of time to file a *pro se* motion for

10  reconsideration of the court's summary judgment order (Dkt. # 87) is GRANTED in part

11  and DENIED in part as follows:  Because Mr. Dahlstrom may not prosecute this *qui tam*

12  action *pro se*, the court DENIES an extension of time for Mr. Dahlstrom to file a *pro se*

13  motion for reconsideration but GRANTS Mr. Dahlstrom 30 days to retain alternate

14  counsel and file a motion for reconsideration.

15      Dated this 15th day of November, 2019.

16

17

18      JAMES L. ROBART
        United States District Judge

19

20

21

22